THE plaintiff Anne was the widow of William Roane, the testator of the defendents. before their intermarriage, on the 24 day of October, 1782, they had executed an agreement, the articles of which were to this purpose : ‘ first, that the parties, ‘during their coverture, shall hold, possess and enjoy all such ‘rights and privilegestts belong to them, in as ample manner asi ‘if the agreement had not been made, secondly, if he should ‘die before her, that she shall immediately hold and possess, ‘during her life, the dwelling house, outhouses, orchard, and ‘appertinences, with 800 acres of land, and one third part of a ‘grist mill, all which are in the county of Essex, in lieu of her ‘dower in his lands to which she would otherwise have been ‘intitled: and she shall, immediately after his death, possess ‘twenty good negroes, including a full proportion of house ser‘vants, such as she may choose, and if the twenty negroes ‘should not amount in value to a Ml third part of the negroes ‘whereof he shall die possessed,* then she shall have as many ‘more as will amount to a full third part of all the negroes, ‘which are to be in lieu of dower of his slaves, and subject to ‘the same laws and regulations, thirdly, if she survive him, *91 ‘ and have no child living at the time of his or her death, that ‘ the negroes, which should come into his estate by the inter- ‘ marriage, with their increase,.shall be vested in her in such ‘ absolute manner that she may dispose of them, or otherwise * they shall descend to her heirs, but if he, with her consent, ‘ should sell any of the negroes which came by her, his estate ‘ should not be accountable for them, fourthly, at his death, ‘ that she shall have the best riding carriage, and horses be- ‘ longing to it, which shall not be brought into account at the ‘ division of the personal estate, and lastly, that she shall be ‘ intitled to a third part of his personal estate in the same man- ‘ ner as if the agreement had not been made.’
William Roane, about a fortnight after the marriage contract, by deeds of gift,* conveyed several of his slaves, with lands, to his sons Spencer Roane and Thomas Roane.
William Roane died in november or december, 1785, without a child by the plaintiff Anne, having made his testament, wherein he declared his desire to be, ‘ that in addition to that ‘part of his household furniture, to which his wife would be ‘ intitled by her marriage, his executors should allow and as- ‘ sign to her so much more as they should judge necessary for ‘ her use, to be possessed during her widowhood, but returned ‘ if she should marry.’
At a sale of the personal estate of William Roane by his executors, the plaintiff Anne bought sundry articles amounting to 368 1. 17s. 9|, for which the defendents in an action at common law recovered a judgement.
In obedience to an order of Essex county court, dated in January, 1786, and a decree, as it is called in the exhibit, of that court, in the following month, commissioners thereby appointed, after laying off and assigning to tbe plaintiff Anne that part of the slaves of William Roane to which, as the commissioners state, she was intitled by marriage-contract, divided the residue among his children.
The whole number of negroes said to be thus assigned to the plaintiff were nineteen, of which some had been tbe slaves of the plaintiff at the time of the marriage, and among these was accounted one who had died in the life time of William Roane.
Tbe plaintiffs, by their bill, clamed dower, over and above tbe wifes proper slaves at the time of tbe intermarriage with William Roane, and an allowance for two, sold by the defen- *92 dents, of the four carriage horses, insisting they were in-titled to four, and prayed an injunction to the judgement for the money recovered on account of the goods bought by the plaintiff Anne.
The defendents insisted that the marriage articles, upon which the plaintiffs relied for asserting, did oppugn, the demand of dower ; that only two, instead of four, horses belonged to the carriage; and that the whole of William Roanes personal estate, with the articles bought by the plaintiff Anne, was not equal to the debts due from him.
The cause came on to be heard, in October, 1790, when the court delivered this
OPINION,
That in the slaves, to the possession of which the plaintiff Anne, by the marriage contract between ber former husband, William Roane, the testator, and herself, was intitled, in lieu of dower, those which were her property, at the time of her intermarriage, ought not to have been included, because the slaves, which by the contract, she should have and enjoy in the event of her surviving him, whether having a child by biin or not, are supposed to be his proper slaves, since a power to settle them on her, in lieu of dower, or otherwise, implieth a property in him at the time of the contract, or at the time of bis death ; whereas the slaves which the plaintiff Anne had, at the time of the contract and intermarriage, were not his property, hut were her property, and remained her property, when he died without having a child by her, and were not subject to the laws and regulations of dower slaves ; that the plaintiffs ought not to be precluded, by the order and decree of Essex county court and the division and assignment made in obedience thereunto, from recovering now so many of the slaves as the plaintiff Anne was intitled to more than what were then assigned to her, because she was not a party in the suit, if it can be called a suit,* wherein that order and decree were made ; nor doth her present demand appear to have been discussed at that time ; that whether the gifts by the testator to his sons Spencer and Thomas be fraudulent as to the plaintiff Anne? is a question not proper to be decided in this case, as it is now brought on, the donees not being parties ; and that the plaintiff Anne was intitled to the two horses only, which she hath received, because only that pair, having ordinarily drawn the carriage, to *93 which the horses were said to ‘ belong,’ are understood to have been designated, and made this
DECREE,
That of the surviving slaves which were in possession of the testator William Roane, at the time of his death, exclusive of the unprofitable from old age and infirmity, and also exclusive as well of the plaintiffs now proper slaves, and the nine formerly received by the plaintiff Anne, as those given by the deeds of gift to the testators sons Spencer and Thomas, although they might have been in his possession at his death, eleven, or so many more as, with those nine, will he equal to one third part, be assigned to the plaintiffs, together with the children of any females among those so to be assigned, born since tbe testators death, the value of which slaves so to be assigned shall be in like proportion to the value of the stock, whence they are to be taken, as one of the numbers is to the other ; and that the defendents account with the plaintiffs for the profits of the slaves so to he assigned from the end of the year in which the testator died ; and the court doth award an injunction to the judgement of the defendents against the plaintiffs in the action at common law, until the account of administration of the testators estate, now directed to be stated and reported, shall discover whether a surplus thereof remain, the plaintiffs share of which may discharge, or he discounted out of, that debt.
This decree, from which the defendents appealed, was affirmed in november, 1791.*

[At his death, W. R. was possessed of only 40 slaves of his own; but this estimate was made upon 70 slaves of which he was possessed at the time of the gifts to bis sons. 1 Wash. 51.—£d.]

[Tbese gifts were prior to tbe execution of tbe marriage contract, though subsequent to its daté. The date was 24 Oct. The execution 14 Nov. 1182. Hence the charge of fraud in those gifts. See Chancellor’s “Opinion,” p. 73; and l Wash. 48.—Ed.~]

[rt was an ex parte motion by the Executors, for the appointment of commissioners to value, assign and divide the slaves. 1 Wash. 48 and 51.—JSW.]

This appeal Is reported in 1 Washington, 4T.